# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-2306
_____

Matthew Goforth, an individual; Malinda Goforth, an individual; MG Management Co., LLC, a Missouri Limited Liability Company; Malinda's Sugar and Spice, LLC, a Missouri Limited Liability Company

*Plaintiffs - Appellants*

v.

Transform Holdco, LLC, a Delaware limited liability company; Hometown Midco, LLC, a Delaware limited liability company; ESL Investments, Inc., a Delaware corporation; ESL Partners, L.P., a Delaware limited partnership

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: April 16, 2026
Filed: July 28, 2026
_____

Before L.R. SMITH, BENTON, and ERICKSON, Circuit Judges.
_____

L.R. SMITH, Circuit Judge.

Matthew Goforth (Matt), through his company, MG Management Co., LLC (MG Management), entered into a dealer agreement with Sears Authorized Home Stores (Sears) that included a non-compete provision extending to Matt's spouse, Malinda Goforth (Malinda). As the agreement expired, Matt stated his intention to

not renew the agreement. Suspecting that the Goforths were going to open a competing business, Sears initiated arbitration and sought an emergency order enforcing the non-compete provision. Believing the provision unreasonable and unenforceable, the Goforths responded to prevent enforcement of the non-complete provision. They did not counterclaim for any affirmative relief. The arbitrator ultimately granted Sears's emergency motion and enforced the non-compete provision.

Later, the Goforths initiated their own arbitration against Sears, alleging antitrust violations based on the non-compete provision of the agreement. The arbitrator concluded that the claims were compulsory counterclaims that the Goforths should have brought in the initial arbitration. Due to Sears's bankruptcy, the Goforths brought this action in the Western District of Missouri against its owners Transform Holdco, LLC and its affiliates (collectively, "Transform"). They assert the same antitrust violation that would have been filed against Sears, challenging the enforceability of the non-compete provision. The district court[1] granted summary judgment for Transform, holding that the claim against Transform was a compulsory counterclaim that the Goforths should have brought in the initial arbitration. The Goforths appeal. We affirm.

## I. *Background*

Around early 2016, Sears entered into a dealer agreement with Matt, then unmarried, through his company MG Management. The agreement allowed Matt to operate a Sears facility in Bolivar, Missouri. The agreement contained a non-compete provision prohibiting "Owner, Controlling Owner, Owner's Affiliate," and "any member of Owner's immediate family" from controlling, owning, or associating with any "Competing Business that operates at or within fifty miles of the Location or within 50 miles of any Sears Authorized Hometown Stores sales facility." R. Doc. 67-1, at 17. The agreement also included an arbitration provision

---

[1]The Honorable M. Douglas Harpool, United States District Court for the Western District of Missouri.

governing "controversies, disputes, and claims arising between" Sears and Matt. *Id.* at 27. According to its terms, this provision extends to "spouses and immediate family members of" any natural person subject to the arbitration provision. *Id.* In 2017, Matt married Malinda. Malinda was not formally added as a named party to the agreement.

In April 2019, Sears learned that Matt would not be renewing the agreement upon its July expiration. In June 2019, Sears filed an emergency motion to enforce the non-compete provision. In response, Matt submitted an affidavit stating that neither he nor his company, MG Management, nor any entity in which he or MG Management have interest or control had plans to compete with Sears after the expiration of the agreement. Based on this affidavit, the arbitrator denied Sears's emergency motion for injunctive relief.

After the arbitrator denied Sears's motion, Sears learned that Matt and Malinda, through Malinda's company, Malinda's Sugar and Spice, intended to open Goforth Home & Lawn (GHL), a business that could compete with Sears. Indeed, the Goforths "did not stop or even briefly pause [their] plans to open [GHL]," "[b]ased on" their belief that "the restraint of trade was unreasonable and unenforceable." R. Doc. 83-1 ¶ 56. The Goforths proceeded because "[Sears] had no basis to prevent [them] from opening [their] new store. [Sears] was not a party to [their new] lease agreement, it had no interest in the store property, and [they] were allowed to not renew [their] dealer agreement if [they] did not want to." *Id.* ¶ 54. Thus, both before Sears initiated arbitration and after its initial emergency motion, the Goforths remodeled the store and started advertising "to open [GHL] as soon as the dealer agreement expired." *Id.* ¶ 51.

After seeing an article about GHL, the Goforths' new business, Sears then brought a renewed motion for injunctive relief. Matt responded and included, among other points, an argument that the agreement was not enforceable under Illinois law because it was too broad. Malinda also responded, arguing that she and her company were not subject to the agreement and therefore not subject to the jurisdiction of the

-3-

arbitration panel. Neither Matt nor Malinda brought any counterclaims or otherwise sought to enjoin the enforcement of the provision. Meanwhile, the Goforths continued renovating and advertising GHL and officially opened on November 8, 2019.

On November 20, 2019, the arbitrator found that Sears had a likelihood of success on the merits; granted its motion for interim relief enforcing the non-compete provision; and added Malinda and her company, Malinda's Sugar and Spice, as parties. The arbitrator found that Malinda and her business were subject to the agreement between Sears and Matt. The arbitrator also required that the Goforths pay Sears's attorneys' fees for not alerting the prior arbitrator to Malinda's known plans to compete. The Goforths appealed the interim ruling. The award was affirmed on March 16, 2020.

On September 23, 2020, a final arbitration award enforced the non-compete provision and awarded attorneys' fees and arbitration costs to Sears. The Goforths appealed the final arbitration award, and an appellate arbitrator reversed in part. The appellate arbitrator reversed the prior arbitrator's finding upholding the non-compete provision and held that it was not enforceable. It then affirmed the attorneys' fees awarded to Sears.

The Goforths then initiated a second arbitration, alleging that the non-compete provision violated the Sherman Act and the Illinois Antitrust Act. The Goforths sought damages, treble damages, and attorneys' fees and costs. Sears filed a motion to dismiss. The arbitrator denied Sears's motion but acknowledged that this second arbitration "involve[d] the same parties, the same core of operative facts and the same core legal issues as the prior matter and at least three prior interim awards in that prior matter." R. Doc. 67-6, at 2. Subsequently, an arbitrator held that the Goforths' antitrust claims were compulsory counterclaims that the Goforths should have brought in the first arbitration because the facts were known when Matt filed answers to the claims. The arbitrator held:

-4-

For the same reasons, [Matt, Malinda, MG Management, and Malinda's Sugar & Spices (collectively "MG") have] demonstrated that [they were] required—and failed—to raise [their] antitrust claims in the prior arbitration. The parties' agreement incorporates Federal Rule of Civil Procedure 13's rule for compulsory counterclaims, in that the instant antitrust claims arose out of the same transaction or occurrence as Sears'[s] original June 7, 2019 demand, and its October 11, 2019 amended demand, both of which were to enforce the noncompetition agreement. *See Patel v. Am. Tel. & Tel., Inc.*, No. 93 C 117, 1993 WL 384569, at *4 (N.D. Ill. Sept. 27, 1993) (finding that "both lawsuits are based on the same contract and the same conduct" and therefore "there can be little doubt that both lawsuits arise out of 'the same transaction or occurrence.'"). MG argues that it was not required to raise an antitrust claim because compulsory counterclaims are only required for claims that could be brought on or before the date that a party serves its pleading, and it had no antitrust claims that had matured by the time it filed its pleadings.

As explained in the above discussion of timeliness, however, MG ignores the impact of its concession that an antitrust claim arises when the plaintiff suffers an injury, and its related claim that it suffered attorney's fees as compensatory damages as a result of Sears enforcing the restraint. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 339 (1971) (antitrust cause of action "immediately accrues" on the "particular date" when "a plaintiff feels the adverse impact of" the violation). Therefore, MG is seeking damages for a claim that it could—and should—have brought by the time it filed responsive pleadings and sought recovery for defense fees on July 15, 2019[,] and October 18, 2019. *MBL (USA) Corp. v. Diekman*, 137 Ill. App. 3d 238, 244 (1985) (where an employer sued to enforce a post-term noncompetition provision, the employee's counterclaim that the attempted enforcement of the noncompetition provision violated antitrust laws was cognizable).

R. Doc. 67-7, at 5 (citation modified). The arbitrator also held that the agreement did not violate antitrust laws. The arbitrator[2] found that the Goforths proof justified damages for lost profits and attorneys' fees, but not for harm to their customers. The arbitrator stated that the Goforths "provided no evidence of a measurable increase in price or reduction in output in a relevant market," and therefore it could not infer anticompetitive effects. *Id.* at 7.

Due to Sears's bankruptcy, the Goforths brought this case against Transform as owners of Sears. The suit alleged the same federal antitrust claim under the Sherman Act based on the non-compete provision. Transform moved for summary judgment arguing that the Goforths' antitrust claim was a compulsory counterclaim that the Goforths should have brought in the first arbitration. Transform similarly argued that *res judicata* foreclosed the claim because it was litigated in the second arbitration. For their part, the Goforths moved for partial summary judgment as to Sears's anticompetitive behavior.

The district court held that the claim was a compulsory counterclaim. The court thus barred the Goforths' antitrust claim. The court, consequently, declined to address Transform's *res judicata* claim or the Goforths' partial motion for summary judgment. It found that the antitrust claim "accrued upon the initiation of the first arbitration by [Sears] on June 7, 2019." R. Doc. 135, at 7. This finding was based on the Goforths' claims of damages in the second arbitration "that started to accrue from the initiation of the first arbitration and noted within the award opinion from the second arbitrator." *Id.* The district court also found that this extended to the Goforths' claims against Transform. The district court then held that Malinda and her company that owned GHL were expressly governed by the dealer agreement and therefore subject to its jurisdiction.

---

[2]The Goforths appealed this order to an appellate arbitrator. The American Arbitration Association suspended that appeal due to Sears's bankruptcy proceedings. The parties ultimately agreed to an indefinite stay of the appeal.

II. *Discussion*

On appeal, the Goforths challenge the district court's grant of summary judgment in favor of Transform. "We review the district court's summary judgment orders de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *In re Wholesale Grocery Prods. Antitrust Litig.*, 752 F.3d 728, 732 (8th Cir. 2014) (citation modified).

The Goforths take issue with the district court's holding that their antitrust claim was a compulsory counterclaim that they should have raised in the initial arbitration. The Goforths argue that the antitrust claims were not compulsory counterclaims because Matt's claim did not arise until November 20, 2019, when the arbitrator granted an order enjoining the Goforths from operating GHL. They also assert that because Malinda was not a party to that arbitration, she had no ability to serve a responsive pleading. In addition, the Goforths argue that the district court erred when finding that the antitrust claim arose upon the initiation of the first arbitration based on the Goforths seeking defense costs in the second arbitration. The Goforths now contend that defense costs are not an antitrust injury needed to support an antitrust claim.

In response, Transform argues that the Goforths' claim accrued when Sears initiated the first arbitration proceeding to enforce the agreement. They first argue that the Goforths could have, and should have, sought injunctive relief against the enforcement. *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 109, 120 (1986) (allowing injunctive relief in the antitrust context where a plaintiff can "show a threat of antitrust injury"). Transform further argues that Sears's attempted enforcement of the non-compete provision constituted an overt act giving rise to the Goforths' claims, regardless of the arbitration panel's subsequent enforcement of the agreement. Transform then argues that the district court did not err in holding that the defense costs constituted a cognizable injury.

A. *Compulsory Counterclaim Accrual*

We first address whether the Goforths' claim—that Transform enforced an anticompetitive non-compete provision—accrued when Transform *sought to enforce* the agreement through its initial arbitration proceeding, or only when the arbitration panel issued the injunctive relief *actually enforcing* the provision.

The parties agree that the agreement incorporated the requirements of Federal Rule of Civil Procedure 13. Rule 13(a) requires a party to bring a claim "that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."

Notably, antitrust creates unique considerations. When alleging antitrust violations, "a cause of action accrues and the statute begins to run when *a defendant commits an act* that injures a plaintiff's business." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188 (1997) (quoting *Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 401 U.S. 321, 338 (1971) (emphasis added)). Such cause of action "entitles a plaintiff to recover" damages suffered upon accrual and "those which [the plaintiff] will suffer in the future from the particular invasion." *Zenith Radio Corp.*, 401 U.S. at 338–39. And in certain antitrust contexts, a "plaintiff need not prove an actual lessening of competition in order to recover." *Blue Shield of Va. v. McCready*, 457 U.S. 465, 482 (1982) (citation modified).

While there is no dispute that the claims arose out of the same transaction and occurrence as the initial arbitration, the parties disagree as to when a cause of action accrues within the antitrust context. The Goforths argue for a last "overt act" analysis similar to an antitrust statute-of-limitations rule. *See, e.g.*, Appellants' Br. 16–20. Transform rejects this suggested rule because it would allow a known claim to survive "based on a later overt act." Appellees' Br. 18. Instead, Transform relies on the "Rule 13(a) require[ment] that a 'pleading must state as a counterclaim *any* claim that—at the time of its service—the pleader has against an opposing party.'" *Id.* (quoting Fed. R. Civ. P. 13(a)).

Overt acts by a defendant can be sufficient for an antitrust claim to accrue, triggering Rule 13(a). "[E]ven when a plaintiff alleges a continuing violation, an overt act *by the defendant* is required to restart the statute of limitations and the statute runs from the last overt act." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) (emphasis added). But "unabated inertial consequences of previous acts" do not reset the statute of limitations. *Midwestern Mach. Co. v. Nw. Airlines, Inc.*, 392 F.3d 265, 271 (8th Cir. 2004) (declining to apply the continuing-violation theory to a monopolistic merger because "[o]nly where the monopolist actively reinitiates the anti-competitive policy and enjoys benefits from that action can the continuing violation theory apply"); *see also Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004) ("Acts that are merely 'unabated inertial consequences' of a single act do not restart the statute of limitations." (footnote omitted)). And indeed, in *Pace*, the Ninth Circuit stated that "[t]he initiation of a lawsuit is the final, immutable act of enforcement of an allegedly illegal contract." *Pace*, 813 F.2d at 238.[3]

Sears's first arbitration filing constituted an overt act that allowed the "cause of action [to] accrue[]," *see Klehr*, 521 U.S. at 188, triggering Rule 13.[4] Therefore, any claim related to the same transaction or occurrence—i.e., the enforcement of the non-compete provision—was a compulsory counterclaim and should have been stated. Further, the arbitrator's later grant of interim relief enforcing the agreement was not a subsequent act of Sears. Thus, the subsequent action relied on by the Goforths was not "an overt act by the defendant" intended to disrupt or injure the Goforths' business. *See Pace*, 813 F.2d at 237.

_____

[3]The Goforths contend that the Ninth Circuit backed away from this holding in *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1203 (9th Cir. 2014). Even so, the Ninth Circuit affirmed in *Samsung* that "a lawsuit constituted an overt act." *Id.* Thus, even with this narrower rule, the overt act initiating the arbitration can cause a claim to accrue for the purposes of Rule 13.

[4]While Sears's action here sufficiently triggered Rule 13(a), we need not decide whether the last overt act rule typically used in the statute-of-limitations context could ever apply in certain Rule 13 contexts.

The Goforths could have, and should have, brought the claim during the first arbitration. Even if the subsequent enforcement did constitute an overt act, *see e.g.*, *Weber v. Consumers Dig., Inc.*, 440 F.2d 729, 731 (7th Cir. 1971) (finding that the obtaining of a preliminary injunction was the "last overt act"), the initial seeking of the preliminary injunction was the necessary act that gave rise to the claim under Federal Rule of Civil Procedure 13. The Goforths argue that Sears's arbitration "did *not* in any conceivable way put 'the aggrieved party on notice that there is a possible antitrust violation.'" Appellants' Reply Br. 7 (quoting *Pace*, 813 F.2d at 238). The record belies this assertion. In Matt's response to Sears's motion for interim relief in the initial arbitration, he argued that the agreement was not enforceable under Illinois law and that the agreement was overly oppressive. This knowledge enabled him to allege that Sears violated any applicable antitrust provisions. Additionally, even after Sears first sought emergency relief in the first arbitration and prior to filing their responses, the Goforths believed "the restraint of trade was unreasonable and unenforceable" and continued their plans to open GHL. R. Doc. 83-1 ¶ 56.

Further supporting that the Goforths could have brought this claim during the first arbitration, the Goforths sought defense costs from the first arbitration as an antitrust injury when they initiated the second arbitration. The Goforths now attempt to argue that the defense costs are not an antitrust injury and therefore cannot give rise to a claim. Relying on *Lovett v. General Motors Corp.*, the Goforths suggest that defense costs cannot be antitrust injuries because they are too consequential. 975 F.2d 518, 521 (8th Cir. 1992) ("[C]onsequential injury is not an antitrust injury."). In *Lovett*, evaluating antitrust standing, we held that "causal connection between an antitrust violation and harm to [a plaintiff] cannot be the basis for antitrust compensation" but rather it must relate to the harm the laws intended to protect and the plaintiff "must have been the target of the anticompetitive activity, not one who has merely suffered indirect, secondary, or remote injury." *Id.* at 520 (citation modified).

In this case, there is no dispute that the Goforths allege that Sears targeted them and that the Goforths did not believe their alleged injuries were "indirect,

secondary, or remote." *Id.* Litigation costs, in some circumstances, connected with antitrust violations can constitute antitrust injury. *See, e.g.*, *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986, 997 (9th Cir. 1979) ("In a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which 'flows' from the antitrust wrong."). For instance, courts have allowed litigation costs to constitute antitrust injury if a plaintiff could demonstrate that the initial suit was "part of a conspiracy that violated the antitrust laws." *Carter v. Variflex, Inc.*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000).

The Goforths' own filings in both the second arbitration and this case sought litigation costs from the first arbitration as part of their antitrust injury. Their pleadings show that they believed that the defense costs—which began accruing as soon as Sears initiated the first arbitration to enforce the non-compete provision—were a part of the damages relevant to the alleged antitrust violations—the sole focus of the second arbitration. Additionally, prior to the enforcement of the agreement, the Goforths believed the agreement was "unreasonable and unenforceable." R. Doc. 83-1 ¶ 56. Its unenforceability was their stated reason for undertaking lease renewal expenses for the GHL location, renovating the inside and outside of the location, and advertising for its new business. *See id.* This, in combination with its filings, demonstrates the Goforths' belief that Sears initiated arbitration as part of its "overarching conspiracy to unlawfully restrain trade by enforcing the post-expiration agreement." R. Doc. 30, at 37. This suggests that the Goforths viewed their litigation costs from the first arbitration as an antitrust injury because they sought such recovery as damages, suggesting that they believed it was "part of a conspiracy that violated the antitrust laws." *Carter*, 101 F. Supp. 2d at 1270.

In sum, we hold that the Goforths' antirust claims accrued when Sears initiated the first arbitration and were, therefore, compulsory counterclaims.[5] This is

---

[5]Because we affirm on the compulsory-counterclaim grounds, we need not address Transform's alternative grounds.

true whether, as the Goforths sought in the second arbitration, the damages were the defenses costs; the Goforths should have sought a preliminary injunction preventing the enforcement; or the initiation of the first arbitration was an overt act that caused the antitrust violation to accrue.

### B. *Initial Arbitration Application to Non-Signee Spouse*

Lastly, the Goforths argue that Malinda's claim was not compulsory because she and her company "had no opportunity to serve a responsive pleading because they objected to the arbitrator's jurisdiction and were not parties to the arbitration agreement." Appellants' Br. 21. However, the dealer agreement explicitly extended to "spouses," which includes Malinda. R. Doc. 67-1, at 27. Further, the Goforths offer no explanation or caselaw as to why they could not have filed a counterclaim in the alternative interpretation. Malinda could have, without damage to the jurisdictional claim, objected to jurisdiction while simultaneously bringing the compulsory counterclaim. *See, e.g.*, *Neifeld v. Steinberg*, 438 F.2d 423, 428 (3d Cir. 1971) (allowing, under Federal Rule of Civil Procedure 12(b), "a defendant to join [jurisdictional] defenses with a counterclaim without waiving these defenses"). Thus, Malinda's antitrust claim was also a compulsory counterclaim and should have been brought in the first arbitration.

### III. *Conclusion*

For the reasons discussed above, we affirm.

_____

-12-